UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |  |
|---|---|---|
| _____ x |  |  |
|  | : | Case No.: 8:14-cv-00357-JDW-AEP |
| LINDA ROUNDTREE, Individually and On | : |  |
| Behalf of Others Similarly Situated, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| BUSH ROSS, P.A., | : |  |
|  | : |  |
| Defendant. | : |  |
| _____ x |  |  |

**PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS COUNSEL**

## I.       STATEMENT OF RELIEF REQUESTED

This is a putative class action brought under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*   Linda Roundtree ("Plaintiff" or "Ms. Roundtree")

respectfully requests that this Court certify this action as a class action under Fed. R. Civ. P. 23,

appoint her as class representative, and appoint her counsel as class counsel.   Plaintiff submits

that the following three Classes[1] should be certified:

### The Overshadowing Class

All persons located in the State of Florida to whom, between February 7, 2013
and February 6, 2014, Bush Ross, P.A. sent an initial written communication in
connection with an attempt to collect any alleged consumer debt, in which the
initial written communication stated as follows:

> Unless the entire sum is paid within thirty (30) days of your receipt
> of this letter, we shall proceed with appropriate actions to protect
> the Association's interests, including, but not limited to the filing
> of a claim of lien and foreclosure thereon.

> and/or

> This is the only communication regarding this matter that you will
> receive prior to the filing of a claim of lien.

> and/or

> Any further communication regarding this matter shall be in
> writing for your own protection.

### The Fee Class

All persons located in the State of Florida to whom, between February 7, 2013
and February 6, 2014, Bush Ross, P.A. sent a demand for payment for Bush Ross,
P.A.'s fees and expenses incurred in connection with its attempts to collect a debt
from such person.

---

[1]   The Overshadowing Class, the Fee Class, and the Lawsuit Class are referred to collectively as
"the Classes."   Excluded from the Classes are Defendant Bush Ross, P.A. ("Bush Ross" or
"Defendant"), its officers and directors, their immediate families and their legal representatives,
heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

## The Lawsuit Class

All persons located in the State of Florida to whom, between February 7, 2013 and February 6, 2014, Bush Ross, P.A. sent a "Notice Required By the Fair Debt Collection Practices Act" as part of a lawsuit filed by Bush Ross, P.A. against such person.

## II.     SUMMARY OF THE ARGUMENT

This case should be certified as a class action.  Discussed *infra*, Ms. Roundtree's claims are based on the same form letter, practice, and form complaint used by Bush Ross as part of its debt collection efforts.  Indeed, each of the three proposed classes has at least 50—and likely far more—Florida consumers as members.  As a result, Plaintiff satisfies the numerosity, commonality, and typicality elements of Rule 23(a).  In addition, the members of the proposed Classes are readily ascertainable, in that Defendant's records identify each member.

Plaintiff's claims likewise satisfy the predominance and superiority requirements of Rule 23(b).  Moreover, Ms. Roundtree is firmly committed to this case and is more than an adequate class representative.  For these reasons, Plaintiff respectfully requests that this Court grant her renewed motion for class certification, appoint her as class representative, and appoint her counsel as class counsel.

## III.     STATEMENT OF FACTS

### A.  Bush Ross' Initial Written Communications

On or about February 12, 2013, Bush Ross sent a written communication to Plaintiff, referencing an alleged debt to North Bay Village Condominium Association, Inc. ¶12.[2]  A true and correct copy of the February 12, 2013 communication is attached hereto as Exhibit A.  The February 12, 2013 communication was the initial communication Plaintiff received from Bush Ross.  ¶13.

---

[2] References to ¶__ refer to the numbered paragraph of the Complaint.  *See* Doc. 1.

The February 12, 2013 communication stated that Plaintiff owed $4,531.12,[3] including, among other charges, attorney's fees of $185.00, "Costs Associated with the Preparation and Delivery of this Demand" of $5.00, a "Short title search" of $15.00, and an "Administrative Fee" of $150.00.  Ex. A. While the first page of the February 12, 2013 communication provided the disclosures required by 15 U.S.C. §1692g, the second page of the communication stated, in pertinent part:

> Unless the entire sum is paid within thirty (30) days of your receipt of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the filing of a claim of lien and foreclosure thereon. If a claim of lien is filed against your unit to collect the amounts stated hereinabove, you will be responsible for the cost of recording the lien ($18.50), a title search ($25.00), and certified mail ($5.00 per unit owner per address), plus additional attorney's fees of approximately $200.00.
>
> *          *          *
>
> This is the only communication regarding this matter that you will receive prior to the filing of a claim of lien.  Any partial or lesser payment which is received after the date of this letter will be applied in accordance with Florida Statute §718.116(3), and you will be responsible for all additional attorney's fees and costs.

Ex. A.  The February 12, 2013 communication then stated:

> Any further communication regarding this matter shall be in writing for your own protection.

*Id.*

Defendant's initial debt collection letter violated the FDCPA at 15 U.S.C. § 1692g because it overshadowed and rendered ineffective the disclosures required by the FDCPA and

---

[3]  While Ms. Roundtree disputes that she owes all of the assessments and charges from North Bay Village Condominium Association, Inc., the validity of the underlying debt is irrelevant to her claims under the FDCPA. *See Solis v. Client Servs., Inc.*, No. 11–23798–Civ, 2013 WL 28377, at *4 (S.D. Fla. Jan. 2, 2013) ("Thus, even where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA. Such a violation may occur despite the validity of the debt and in no way is dependent upon the legitimacy of the debt.").

would cause the least-sophisticated consumer to understand (incorrectly) that all disputes must be made in writing. *See, e.g., Baez v. Wagner & Hunt, P.A.*, 442 F. Supp. 2d 1273, 1277 (S.D. Fla. 2006) (holding that 15 U.S.C. § 1692g(a)(3) does not require disputes to be "in writing"); *Clark v. Absolute Collection Service, Inc.*, 741 F.3d 487, 491 (4th Cir. 2014) ("we find that section 1692g(a)(3) permits consumers to dispute the validity of a debt orally, and it does not impose a writing requirement.").[4]  Moreover, by informing Plaintiff that a lien would be filed within 30 days, regardless of whether she disputed the debt, Defendant conveyed to consumers that any disputes of the alleged debt would be pointless, thus actively dissuading consumers from seeking such verification.  In addition, by charging fees incident to the collection of debt, and by threatening liens and foreclosure if such fees were not paid in full, Bush Ross violated the FDCPA at 15 U.S.C. § 1692e(2), e(10), f, and f(1).

During the proposed class period of February 7, 2013 to February 6, 2014, Bush Ross "sent more than 50 first-contact collection letters containing" the subject language.  *See* Defendant's Amended Response to Plaintiff's First Set of Interrogatories Nos. 8, 10, attached hereto as Exhibit B.  Likewise, Bush Ross "sent more than 50 letters to Florida addresses between February 7, 2013 and February 6, 2013, seeking payment of monies purportedly due an association, including attorneys' fees and/or expenses incurred in connection with BUSH ROSS's legal services."  *Id*. at No. 12.  As a result, the Overshadowing Class and the Fee Class each have at least 50 members.

**B.  Bush Ross' Form Foreclosure Complaints**

On August 30, 2013, Bush Ross, on behalf North Bay Village Condominium Association, Inc., filed a complaint against Ms. Roundtree in Hillsborough County Court to foreclose on Ms.

---

[4] Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

Roundtree's property as a result of the allegedly delinquent homeowners' assessments and the failure to pay Bush Ross' fees in full.  Included with the county court complaint was a one-page "Notice Required By the Fair Debt Collection Practices Act," a true and correct copy of which is attached hereto as Exhibit C.  The "Notice" stated, *inter alia*, that Ms. Roundtree "may dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this notice.  If the debtor fails to dispute within thirty (30) days, the debt will be assumed valid by the creditor." Ex. C.

However, because Bush Ross served the county court complaint more than 30 days after its initial written communication to Ms. Roundtree, Ms. Roundtree no longer had the rights conferred by 15 U.S.C. §1692g—a fact admitted by Bush Ross.  *See* Defendant's Responses to Plaintiff's First Requests for Production, attached hereto as Exhibit D, at No. 6 ("The requirement that a debt be verified under 15 U.S.C. § 1692g(b) is only triggered upon a consumer's request for verification within 30 days of the initial communication.").  That is, and by Defendant's admission, consumers do not have the right to verify a debt beyond 30 days after the initial written communication and, thus, the form Notice included in Defendant's collection lawsuits misstates consumers' rights under the FDCPA.

Moreover, the summons issued with the complaint against Ms. Roundtree stated that "written defenses to the complaint" must be served on Bush Ross "within 20 days after service of this summons…"  If Ms. Roundtree did not respond, in writing, within 20 days, the summons provided that "a default will be entered against [Ms. Roundtree] for the relief demanded in the complaint or petition."  ¶20.  Thus, the language in the "Notice Required By the Fair Debt Collection Practices Act," when read in conjunction with the language in the summons, would be confusing to the least sophisticated consumer, who would be unsure whether she needed to

6

respond to the complaint within 20 days in writing, dispute the debt within 30 days orally or in writing, or all three. *See, e.g., Freire v. Aldridge Connors, LLP*, -- F. Supp. 2d ----, 2014 WL 407357, at \*4 (S.D. Fla. Feb. 4, 2014) ("Upon review, the Court agrees with Plaintiffs, and finds Defendant's notice, albeit gratuitously provided, could be deceptive to the least sophisticated consumer."); *Battle v. Gladstone Law Grp.*, 951 F. Supp. 2d 1310, 1315 (S.D. Fla. 2013) ("The least sophisticated consumer could be deceived or confused when the summons sets out a 20–day deadline to respond to the lawsuit and the attached notice provides for a 30–day deadline to request validation of the debt."); *Lewis v. Marinosci Law Grp., P.C.*, No. 13-61676-CIV, 2013 WL 5789183, at \*3-\*4 (S.D. Fla. Oct. 29, 2013).

Bush Ross, as a matter of pattern and practice, includes its one-page "Notice Required By the Fair Debt Collection Practices Act" with each foreclosure lawsuit it files against Florida consumers.  Ex. B at No. 16 ("BUSH ROSS states that it filed more than 50 foreclosure complaints on behalf of an association in an attempt to collect past-due assessments in Florida between February 7, 2013, and February 6, 2014.  Each foreclosure complaint would have included a "Notice Required By the Fair Debt Collection Practices Act" in the form attached as Exhibit B to Plaintiff's Complaint.").  To be sure, Bush Ross filed far more than 50 foreclosure complaints during the February 7, 2013 to February 6, 2014 Class Period.  A search of foreclosure complaints filed by Bush Ross attorney Steven Mezer shows more than 300 such cases during the Class Period in Hillsborough County alone, including the complaint against Ms. Roundtree.  Of those, more than 150 were filed on behalf of condominium or homeowners' associations against individual Florida consumers.  A true and correct copy of the results of the docket search from the Hillsborough County clerk of the court is attached hereto as Exhibit E.

IV.    MEMORANDUM OF LAW

A.  Legal Standard Under Fed. R. Civ. P. 23

To attain certification of the proposed Classes, Plaintiff must satisfy each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute.  *See Drossin v. National Action Fin. Services, Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class).

"In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true."  *In re Checking Overdraft Litig.,* 281 F.R.D. 667, 672 (S.D. Fla. 2012) (certifying class action).  Although a district court may look past the pleadings to determine if Rule 23's requirements have been met, for certification purposes "the Court may not consider the plaintiffs' likelihood of success on the merits."  *Id.*  In certifying a class, the Court should consider that certification is conditional and may be modified or vacated as the case progresses toward resolution on the merits. Fed. R. Civ. P. 23(c)(1)–(4); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Prado–Steiman v. Bush*, 221 F.3d 1266, 1273–74 (11th Cir. 2000).

B.  The FDCPA is Well-Suited For Class Action Treatment

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties.  15 U.S.C. §1692 *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  15 U.S.C. §1692(k).  The provisions of the FDCPA declare certain rights available to debtors, forbid

8

deceitful and misleading practices, and prohibit harassing and abusive tactics.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a). The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). Designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) ("The Fair Debt Collection Practices Act prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.").

Class treatment of claims under the FDCPA is essential to its statutory structure. "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004). As the Fourth Circuit Court of Appeals recognized, "[w]ithout a real sting, the defendants would be unlikely to be deterred from violating the Act, in light of the substantial profit to be made using aggressive and improper collection practices." *United States v. National Fin. Services, Inc.*, 98 F.3d 131, 141 (4th Cir. 1996). Congress, in fact, designated special remedies to unnamed members of a class action

9

filed under the FDCPA. *See* 15 U.S.C. §1692k(a),(b).

Moreover, class treatment of FDCPA claims is particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *Hepson v. J.C. Christensen and Assoc., Inc.*, 2008 WL 4833097, at \*4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature"). To that end, the Eleventh Circuit uses the "least-sophisticated consumer" standard to evaluate whether a debt collector's communications violate the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) ("we believe that the FDCPA's purpose of protecting consumers is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls."). This objective standard protects "naive consumers" and, because it is an objective test, it is immaterial whether an individual consumer was misled by a debt collector's representations, thus rendering individualized determinations irrelevant. *Orr v. Westport Recovery Corp.*, 2013 WL 1729578, at \*3 (N.D. Ga. Apr. 16, 2013). Furthermore, because the FDCPA is a strict liability statute, it is not necessary to demonstrate that Bush Ross acted with any ill intent. *Kennedy v. Compucredit Holdings Corp.*, --- F. Supp. 2d ----, 2014 WL 1284495, at \*2 (M.D. Fla. Mar. 31, 2014) ("Accordingly, the FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt as well as the use of unfair or unconscionable means of collection. The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."); *Rivera v. Amalgamated Debt Collection Services, Inc.*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) ("The FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector.").

Because of their overwhelmingly common questions of fact and law, numerous district courts in the Eleventh Circuit have certified class actions, like here, based on form communications and standardized debt collection activity.  *See, e.g., Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014);  *Klewinowski v. MFP, Inc.*, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013); *Lewis v. ARS Nat'l Services, Inc.*, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Services Corp.*, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr*, P.A., 222 F.R.D. 692 (S.D. Fla. 2004); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999).  This Court should do the same.

### C.  Plaintiff Satisfies the Requirements of Rule 23(a)

A plaintiff seeking class certification must establish each of the four requirements of Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Sharf*, 295 F.R.D. at 668-69; *Drossin*, 255 F.R.D. at 614.

#### a.  Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986).  While parties seeking class certification do not need to know the "precise number of class members," they "must make reasonable estimates with support as to the size of the proposed class." *Fuller*, 197 F.R.D. at 699.  The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (*quoting Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546,

1553 (11th Cir.1986)).

Here, more than 50 Florida residents are members of each of the three proposed classes. *See* Exs. B, E.[5]  Based on the number of foreclosure complaints filed by Bush Ross during the Class Period in Hillsborough County alone on behalf of association clients, each Class likely has in excess of 150 members. [6] In any event, because each of the proposed classes has at least 50 members, the classes are sufficiently numerous and joinder is impracticable. *See Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons); *Beard v. Dominion Homes Fin. Services, Inc.*, 2007 WL 2838934, at *4 (S.D. Ohio Sept. 26, 2007) (numerosity satisfied with 41 class members).  Moreover, there should be no difficulty ascertaining who the members of the Classes are as Defendant has records identifying each such member.  *See* Ex. B at Nos. 7-8, 10, 12, 15-16 (noting that Defendant maintains files for the letters it sends and collection lawsuits it files).[7]  In addition, the members of the Lawsuit Class can be determined through searches of publicly available records.  *See* Ex. E.

---

[5]  Bush Ross has not provided the exact number of members of each of the proposed classes.  On May 23, 2014, Plaintiff filed a motion to compel the production of such discovery.  *See* Doc.27. If the Court compels Defendant to produce such discovery, Plaintiff will supplement this motion.

[6]  Bush Ross has a robust debt collections and creditors' rights practice and, as a result, it stands to reason that each of the classes will have hundreds of members.
*See* http://www.bushross.com/practices-Creditors-Rights.html (last visited June 16, 2014). Indeed, Bush Ross shareholder Eric N. Appleton has admitted "that during the 'class period' defined by Plaintiff in this case Bush Ross has collectively sent or served more than 1,000 collection letters or foreclosure lawsuits."  Doc. 32, ¶9.  Thus, there can be no doubt that numerosity is satisfied here.

[7]  Plaintiff requested that Bush Ross produce each of the initial debt collection letters it sent during the Class Period, and each "Notice Required By the Fair Debt Collection Practices Act" it provided in connection with a foreclosure complaint.  Defendant objected.  As a result, Plaintiff filed a motion to compel the production of such discovery.  *See* Doc. 27.  If the Court compels Defendant to produce such discovery, Plaintiff will supplement this motion accordingly.

### b.  Commonality

"Commonality requires at least one issue common to all members of the class, but does not require that all factual and legal questions be common." *Agan*, 222 F.R.D. at 697.  The commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members."  *Id*. ("Similarly, a plaintiff satisfies the commonality requirement when all class members received the same collection letter.").

The questions of fact and law at issue here are entirely common.  The claims asserted by Plaintiff and the Classes originate from the same conduct, practice, and procedure on the part of Bush Ross, namely the issuance of a standardized initial debt collection letter, the charging of fees incident to the collection of the debt, and the inclusion of untimely debt collection disclosures in its foreclosure filings.  Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.  For these reasons, claims brought as a result of a form letter are routinely certified as class actions.  *See id.* at 698 (finding commonality satisfied where "[a]ll of the proposed class members received the same form letter and claim of lien, and all of the proposed class members have the same legal question of whether the form letter and claim of lien violated the FDCPA and FCCPA."); *Swanson*, 186 F.R.D. at 668 ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 (finding commonality where "[a]ll received the identical or substantially similar letter from Defendant.").[8]

---

[8]  That some determinations as to the consumer nature of an underlying debt may be necessary (*i.e.*, whether the past-due assessments were incurred on a personal home or a rental property), do not render class certification inappropriate.  *See, e.g., Butto v. Collecto, Inc.*, 290 F.R.D. 372, 380 (E.D.N.Y. 2013) ("More importantly, the Defendant's argument for the denial of class certification because of the requirement of a personal debt for purposes of recovering under the

Here, each member of the Overshadowing Class received an initial written communication from Bush Ross stating: "Unless the entire sum is paid within thirty (30) days of your receipt of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the filing of a claim of lien and foreclosure thereon" and/or "This is the only communication regarding this matter that you will receive prior to the filing of a claim of lien" and/or "Any further communication regarding this matter shall be in writing for your own protection." Thus, each member of the Overshadowing Class has an identical claim— whether Defendant's initial written communications violate the FDCPA.

Likewise, Bush Ross charged each member of the Fee Class for attorneys' fees and costs. As a result, each member of the Fee Class has a common claim regarding whether such fees, charged incident to the collection of a debt, are permissible under the FDCPA.

Finally, each member of the Lawsuit Class received a "Notice Required By the Fair Debt Collection Practices Act" as part of a lawsuit filed by Bush Ross. As a result, the claims of each member of the Lawsuit Class are entirely common, as the salient question among members of the Lawsuit Class is whether Defendant's form "Notice" violates the FDCPA.

### c.  Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273

---

FDCPA is without merit. … the Court notes that the Defendant is unable to point to a single FDCPA class action case where the nature of the underlying debts at issue served to bar certification.").

F.3d 1341, 1346 (11th Cir. 2001).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004).

Here, Ms. Roundtree and the members of the Classes suffered from a common practice employed by Bush Ross. Thus, Plaintiff possesses the same interests and has suffered the same injuries as each class member and asserts identical claims and seeks identical relief on behalf of the unnamed class members. To be sure, there is no doubt that Ms. Roundtree is a member of each of the proposed Classes and that her claims are typical of those of the other members of the Classes. *See* Ex. A (demonstrating that Plaintiff is a member of the Overshadowing Class and Fee Class); Exs. C, E (Lawsuit Class). As a result, Plaintiff's claims are typical of those of the Classes she seeks to represent. *See Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds

that typicality has been satisfied.").

### d. Adequacy of Representation

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she can act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (certifying class action).

Ms. Roundtree's claims are aligned with the claims of members of the Classes. She is committed to vigorously pursuing the members' claims with their best interests in mind. Ms. Roundtree will fairly and adequately protect the interests of the Classes and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Classes. *See* Declaration of Linda Roundtree, attached hereto as Exhibit F, at ¶¶3-11. In short, Ms. Roundtree stands willing and prepared to serve this Court and the proposed Classes. *Id.*

Plaintiff has retained the services of counsel who are experienced in complex class action litigation, will adequately prosecute this action, and will protect all absent Class members. Plaintiff's counsel, Greenwald Davidson PLLC, has ample experience representing plaintiffs in consumer class actions, and is well-equipped to handle the instant litigation. *See, e.g., Ritchie v. Van Ru Credit Corp.*, 2014 WL 956131, at *3 (D. Ariz. Mar. 12, 2014) (appointing Greenwald Davidson PLLC as class counsel and preliminarily approving $2.3 million class action settlement, where "Plaintiff's counsel-and proposed class counsel-Greenwald Davidson PLLC has ample experience in litigating class actions and has demonstrated an understanding of applicable law. As mentioned above, Plaintiff's counsel is determined to tenaciously prosecute this action, and has done so from its inception."); *Hunter v. Nicholas Financial Corp.*, No. 0:13-

cv-61126-DMM, Doc. 32 (S.D. Fla. Apr. 28, 2014) (appointing Greenwald Davidson PLLC as class counsel and granting final approval of class action settlement under Electronic Fund Transfer Act); *Sharf*, 295 F.R.D. at 670 (appointing Greenwald Davidson as class counsel and finding that "Plaintiff and his counsel are committed to vigorously pursuing the claims of the class members.  Plaintiff's interests are also aligned with those of the class members and his selected counsel has sufficient experience representing plaintiffs in consumer class actions."); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392 (D. Mass. 2011) (counsel Michael L. Greenwald member of litigation team appointed class counsel); *City of Ann Arbor Employees' Retirement System v. Sonoco Products Co.*, 270 F.R.D. 247, 253 (D.S.C. 2010) (same); *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83 (E.D.N.C. 2009) (same); *In Re NationsRent Rental Fee Litig.*, 2009 WL 636188, at *11 (S.D. Fla. Feb. 24, 2009) (same).  As a result, Plaintiff satisfies Fed. R. Civ. P. 23(a)(4).

### e.  Plaintiff's Counsel Should Be Appointed Class Counsel

Plaintiff and proposed Class Counsel, Greenwald Davidson PLLC, will vigorously prosecute this action.  In addition to satisfying the adequacy prong of Rule 23(a)(4), Greenwald Davidson also satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel.  *See, e.g., Ritchie*, 2014 WL 95631, at *3.

### D.  Plaintiff Satisfies the Requirements of Rule 23(b)

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b).  Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting the individual members and that, on balance, a class action is superior to other methods available for adjudicating the controversy.

## 1.      Predominance

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).  Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof."  *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class.  Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, common issues necessarily predominate because Ms. Roundtree's claims are all based on standardized conduct by Bush Ross, including its form initial debt collection letter, the charging of fees incident to the collection of a debt, and its standardized "Notice Required By the Fair Debt Collection Practices Act," which it provides to consumers as part of each foreclosure lawsuit it files.  For this reason, courts in this Circuit routinely find that claims based on form debt collection letters and standardized conduct satisfy the predominance requirement of Rule 23(b)(3).  *See Sharf*, 295 F.R.D. at 671 ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is whether the "YOUR CREDITORS" letter violates the

FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"); *Fuller*, 197 F.R.D. at 701-02 ("The essential common factual link between all of the prospective class members is the letters sent by Defendants. Plaintiffs' basis for the claim is the language and content of the letters."); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("As to the FDCPA class, the Court finds that common issues predominate.").

As Judge Thompson explained in certifying a class action based on an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer ... fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [Plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

Likewise, common questions predominate for members of the Fee Class. That is, either

Bush Ross has a right to attempt to collect its fees and costs directly from consumers in the absence of an agreement authorizing it to do so, or it does not.  The claims of the members of the Fee Class will rise or fall on this question, and class certification is therefore appropriate.  *See Mund v. EMCC, Inc.*, 259 F.R.D. 180, 184-85 (D. Minn. 2009) (certifying claims under FDCPA where debt collector imposed collection fee in conjunction with its debt collection efforts).

### 2.    Superiority

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).  Because the claims in this case all arise from the same conduct and form debt collection letters and filings, a class action is the superior vehicle for determining the rights of absent class members.

Here, no one member of the Classes that Plaintiff seeks to represent has an interest in controlling the prosecution of the action because the claims of all members of each Class are identical as the allegations involve standardized conduct, and each Class member is likely to have suffered relatively small statutory damages.   In certifying FDCPA claims, Judge Scola explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of

adjudicating Plaintiffs' claims under the FDCPA [].

*Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013).

For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "Debtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of $1,000."). A class action, therefore, is the superior method of adjudicating this controversy.

## V.     CONCLUSION

Plaintiff respectfully requests that this Court grant her Renewed Motion for Class Certification and Appointment of Class Counsel, approve her as Class Representative, and appoint Greenwald Davidson PLLC as Class Counsel. Furthermore, and pursuant to Local Rule 4.04(b), Plaintiff respectfully requests that the Court order the parties to meet and confer regarding the most cost-effective manner to issue notice in accordance with Fed. R. Civ. P. 23(c)(2).

Dated this 16th day of June, 2014.          /s/ Michael L. Greenwald
                                            **MICHAEL L. GREENWALD**
                                            Florida Bar No. 761761
                                            **JAMES L. DAVIDSON**
                                            Florida Bar. No. 723371
                                            GREENWALD DAVIDSON PLLC
                                            5550 Glades Road, Suite 500
                                            Boca Raton, FL 33431
                                            Telephone: 561.826.5477
                                            Fax: 561.961.5684
                                            mgreenwald@mgjdlaw.com
                                            jdavidson@mgjdlaw.com

                                            Counsel for Plaintiff and Proposed Class
                                            Counsel


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on June 16, 2014, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

                                            /s/ Michael L. Greenwald
                                            **MICHAEL L. GREENWALD**
                                            Florida Bar. No. 0761761