UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| LINDA ROUNDTREE, Individually and On Behalf of Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>BUSH ROSS, P.A.,<br><br>        Defendant. | Case No.: 8:14-cv-00357-JDW-AEP |

**PLAINTIFF'S MOTION IN LIMINE REGARDING THE DETERMINATION OF BUSH ROSS, P.A.'S NET WORTH, AND RENEWED MOTION TO COMPEL THE <u>PRODUCTION OF RELATED DOCUMENTS</u>**

**Introduction**

The Fair Debt Collection Practices Act ("FDCPA") limits the statutory damages available to a certified class to 1 percent of a defendant's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B) ("in the case of a class action, . . . (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). Thus, an accurate determination of a debt collector's net worth is vital to establishing the available statutory damages in certified FDCPA class actions like this one.

Despite its importance, however, it does not appear that a court in this Circuit has addressed the proper methodology for analyzing a debt collector's net worth. Case law from outside this Circuit also is of limited value, as the few cases analyzing the question address the net worth of debt collection companies, as opposed to pass-through entities like law firms where balance-sheet net worth is an unhelpful, and misleading, metric. Indeed, because law firms tend not to

accumulate property or tangible assets, but instead drive their revenues through human capital and exist as a means to deliver profits to their shareholders, using a balance sheet to determine net worth yields absurd results, as law firms that generate millions of dollars in profits for their shareholders would appear to have no, or negative, net worth when only a balance sheet is considered.  Such is the case with Bush Ross, P.A., which—despite being a well-regarded and profitable law firm with dozens of partners and millions in annual profits—shows a negative value when only a quarter-end balance sheet is used to calculate its net worth.  This illogical result is at odds both with common sense and the consumer protection purposes underlying the FDCPA.

As explained more fully below, and given the untenable results yielded when determining a law firm's net worth based solely on its balance sheet, Plaintiff Linda Roundtree respectfully submits that the net worth of a debt collection law firm like Bush Ross should be determined in the same manner law firm purchasers and partners value their shares—based on the firm's annual gross revenues.

**Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), undersigned counsel has conferred with counsel for Bush Ross regarding the relief requested herein.  The parties have been unable to agree on the proper methodology to determine Bush Ross's net worth.

**Argument**

**A. The FDCPA does not define "net worth," and courts disagree on the proper methodology for calculating the net worth of a debt collector.**

"There exists judicial disagreement over how to calculate 'net worth' for purposes of § 1692k(a)(B)." *Jordan v. Commonwealth Fin. Systems, Inc.*, 237 F.R.D. 132, 139 n.6 (E.D. Pa. 2006).  Some courts define 'net worth' as the defendant's book value, as dictated by the defendant's balance sheet. *Id*. Others take a broader approach, "looking beyond the balance sheet

to the defendant's fair market net worth, which would include equity, capital stock, and goodwill." *Id. Compare Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k(a)(B) of FDCPA means "balance sheet or book value net worth")[1] *with Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D. Pa. 2004) (refusing to accept the defendant's balance sheet, which showed that assets equaled liabilities, for purposes of computing "net worth" under § 1692k(a)(B), and, instead, requiring consideration of "equity, capital stock, and goodwill").

Neither *Sanders* nor *Wisneski*, however, analyzed how to properly determine the net worth of a law firm. Rather, those decisions dealt with the valuation of debt collection corporations, which necessarily have a different corporate structure than a law firm and therefore are of limited usefulness here. Furthermore, it does not appear that a court in this Circuit has addressed the proper methodology for determining a debt collector's net worth—whether that collector is a law firm acting as a professional association, or traditional corporation. Notwithstanding the lack of on-point authority, this Court should adopt a realistic valuation method for debt collection law firms like Bush Ross that so often engage in the very practices the FDCPA was enacted to regulate.

**B. Using a balance sheet to determine the net worth of a law firm defies Congressional intent and leads to absurd results.**

In rejecting the defendant's argument that net worth should be based on the difference between a company's assets and its liabilities as reflected on a balance sheet, the Eastern District of Pennsylvania explained:

---

[1] While Judge Porcelli indicated at oral argument on Ms. Roundtree's motion to compel that he found *Sanders* to be persuasive, Ms. Roundtree respectfully submits that the Court's comments were in the context of a motion to compel, not a motion in limine, and without the benefit of briefing on the various methodologies for calculating net worth. Moreover, the Court invited Ms. Roundtree to file the instant motion through its June 2, 2015 order. Doc. 94 ("Within fourteen (14) days of the date of this Order, either party may file a motion regarding any outstanding issues relating to the computation of Defendant's net worth.").

3

> Defendant's argument is unpersuasive. I do not believe that Congress intended to allow a company to avoid a class action litigation arising under the FDCPA by presenting a balance sheet which shows that assets equal liabilities; such a demonstration is the nature of a balance sheet. I would include equity, capital stock, and goodwill into the calculation of a company's net worth for these purposes. Under this analysis, Defendants balance sheet clearly indicates that they have net worth in the form of common stock and equity, as well as whatever goodwill Defendant has established as a company.

*Wisneski*, 227 F.R.D. at 261.

Likewise here, using a balance sheet to determine Bush Ross's net worth would defy Congressional intent and allow a profitable, thriving law firm to largely avoid paying statutory damages for its violations of the FDCPA. *See id.* This is because a balance sheet only shows tangible assets, *i.e.*, cash on hand, at a specific moment in time, but does not show the law firm's intangible assets. To be sure, and unlike many corporations, tangible assets are not the primary driver of a law firm's value. Rather, law firms rely on human capital to produce revenues—namely in the form of billable hours and contingent fee arrangements. Human capital, however, is not reflected on a balance sheet. To the contrary, traditional corporations use inventory, buildings, equipment, and other capital to drive revenue, all of which are reflected on a balance sheet. *See* Affidavit of Brandi L. Ruffalo, Doc. 78-5 at 22. Because a law firm's predominant asset, *i.e.*, human capital, is not reflected on its balance sheet, a balance sheet is a poor indicator of a law firm's net worth.

As a result, a snapshot of a law firm's financials, taken at quarter-end after partnership distributions are made, will show virtually no net worth even though the law firm may enjoy tremendous profits. In Bush Ross's case, its quarter-end balance sheet shows a negative net worth after partnership distributions are made—despite the firm's millions of dollars in net profits. Indeed, Bush Ross is Tampa Bay's tenth-largest law firm, with 51 local attorneys, including 36

partners, and more than 110 employees.[2] The firm hardly can be said to have negative value, and its shareholders cannot possibly view their equity shares in Bush Ross as worthless.

Given this dichotomy, a balance sheet cannot be the proper indicator of a law firm's net worth. Doc. 78-5 at 27 ("To determine net worth without including all assets, both tangible and intangible, would provide a windfall to defendants who have successfully distorted balance sheets or shifted value to affiliate companies. . . . these related party transactions have a high potential to create preferential transactions which could transfer assets and value from one entity to another and could impact the ultimate value of a company.").

What's more, the value of a law firm as shown on its balance sheet will wildly fluctuate depending on the particular day when the balance sheet is produced. For example, the cash used to make partnership distributions will show as an asset the day before distributions are made, but will not appear at all on the balance sheet the day afterward. Thus, a law firm defendant can create the appearance of a very low net worth by providing a balance sheet of the firm's finances taken immediately after distributions are made, when its checking account is at its lowest point. This method for determining net worth also creates an incentive for a law firm to immediately distribute its profits to shareholders so that they do not appear on a balance sheet. Likewise, using a balance sheet to determine statutory damages in an FDCPA case incentivizes law firms to rent office space instead of buying, to lease equipment and furniture, and to otherwise not accumulate assets. These choices, however, have little to do with a firm's profits or its ability to pay the consumers it has wronged, and instead have everything to do with manipulating the firm's balance sheet net worth to limit potential exposure. At the same time, an outstanding note or line of credit will show as a

---

[2]   *See* http://www.bizjournals.com/tampabay/subscriber-only/2014/01/24/law-firms-2014.html (last visited June 11, 2015).

liability on a balance sheet that, when coupled with a low-balance checking account after partnership distributions are made, can create the illusion of negative net worth in an otherwise prosperous law firm.

Finally, using a balance sheet to make a large, profitable firm appear to have low or negative net worth creates the perverse incentive to name individual partners as defendants in FDCPA class actions. Because law firm partners likely will have tangible assets, such as homes, cars, investment accounts, and other monetary assets, the partner's net worth—as reflected on a personal balance sheet—may exceed that of the law firm. This, naturally, creates an incentive for plaintiffs to name individual partners as defendants in FDCPA class actions, thereby multiplying the parties and the attendant litigation costs. This undesirable consequence strongly militates against using a balance sheet to determine a law firm's net worth.

In short, because a balance sheet does not accurately portray the finances of a law firm or its ability to pay statutory damages, and because it lends itself to manipulation and abuse, utilizing a balance sheet is not the proper method for valuing a law firm for purposes of the FDCPA. *See Wisneski*, 227 F.R.D. at 261.

**C. A law firm's net worth for purposes of the FDCPA should be determined by examining its annual revenues.**

The expected future revenues and/or cash flow of a professional practice are a primary determinant of value. Professional practices usually pay out all their earnings to their principals as compensation and benefits. *See,* generally, Doc. 78-5. While many ways exist to value a law firm, the "rule-of-thumb" approach is simple and direct, and can be utilized in FDCPA class actions with limited discovery and without the need for expert testimony. As explained by John W. Olmstead, MBA Ph.D., in his article "How Much Is Your Firm Worth," the "rule-of-thumb" approach values a law firm by multiplying one year's gross revenues by a factor of x, with the

6

result being the stream of income's value.[3]  Dr. Olmstead suggests that, to even out peculiar ups or downs in the firm's revenue stream, the firm's gross fee revenue should be averaged over the past five years.  *Id*.

   The proper multiplier is a matter of debate.  As Dr. Olmstead explains:

> Some argue that the multiplier for the rule-of-thumb method for law practices should be between 0.5 to 3.0. However, based upon what we have seen in recent sales of law practices, the multiplier for the rule-of-thumb method for law practices is ranging between 0.6 to 1.0 (60%-100%) of annual year's gross fee revenue. Another way to look at it would be 1.2 to 2.0 (120% to 200%) times net income.

*Id*.

   In his article, "Valuation of a Law Practice," published by the American Bar Association, James D. Cotterman suggests that to value a law firm's net worth, the proper multiple to gross revenues is between 0.75 and 1.25.[4]

    Thus, and for the ease of determining net worth without the need for complex calculations and dueling experts, Ms. Roundtree respectfully submits that Bush Ross's net worth, for the purposes of calculating available statutory damages to the three classes, be determined by averaging the firm's gross revenues for the past five years and multiplying the average gross revenues by a factor of 1.0.  In that way, the firm's net worth will be based on the money it brings in (*i.e.*, its cash flow) and will avoid the pitfalls associated with balance sheet net worth.  Moreover, because using gross revenues to determine net worth is simple, complex calculations will be unnecessary and only limited discovery will be required.  In this way, Ms. Roundtree's proposed method of determining Bush Ross's net worth is in accord with the reasoning underlying the

---

[3]   *See http://www.olmsteadassoc.com/resource-center/Law-Firm-Succession-Exit-Strategies-Valuing-the-Firm.aspx* (last visited June 10, 2015).

[4]   *See https://www.americanbar.org/newsletter/publications/gp_solo_magazine_home/ gp_solo_magazine_index/jf00cotterman.html* (last visited June 10, 2015).
...

Seventh Circuit's opinion in *Sanders*: "Another probable purpose of the provision is to make the damage calculation easy for the parties and trial judges." 209 F.3d at 1003.

Separately, using an easy-to-calculate "rule of thumb" approach makes particular sense because statutory damages are capped at 1 percent of a defendant's net worth. Thus, even if a more complicated and expensive methodology would yield a slightly different outcome, once the determined net worth is multiplied by 0.01, any minor discrepancies will become largely irrelevant.[5]

Finally, using a law firm defendant's revenue stream to calculate its net worth eliminates the concern expressed by the court in *Sanders* that "violations should not be punished with such severity that the companies are deprived of existence." 209 F.3d at 1002. Unlike a traditional corporation that may be forced to liquidate tangible assets to make a payment, tying a law firm's net worth to its cash flow ensures that an award of statutory damages limited to 1 percent of that annual cash flow will not have a crippling effect on the firm's business, and will not "deprive[ it] of existence." *See id*.

### D. The Court should compel Bush Ross to produce its audited financial statements showing its gross revenues for the years 2011, 2012, 2013, 2014, and 2015 year-to-date.

There is no dispute that Bush Ross's net worth is directly relevant to the determination of available statutory damages under the FDCPA. Because Bush Ross's net worth should be calculated based on its average gross revenues for the past five years, the Court should compel Bush Ross to produce this information. *See, e.g., Duval v. Law Office of Andreu. Palma & Andreu, PL*, No. 09-22636-CIV, 2010 WL 2179763, at *8 (S.D. Fla. May 30, 2010) (requiring production

---

[5]   For example, if a "rule of thumb" analysis yields a net worth of $8 million, but a more costly analysis of a firm's financials yields a net worth of $8.5 million, the range of available statutory damages is from $80,000 to $85,000—just a $5,000 difference that would not merit the expense of dueling experts and related motion practice.

of law firm's financial documents in FDCPA suit, including yearly balance sheets); *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661, 669 (D.N.M. 2009) (noting that *Sanders* is not the law of the Tenth Circuit and compelling the production of net worth documentation); *Hallmark v. Cohen & Slamowitz, Midland Funding LLC*, 302 F.R.D. 295, 299-300 (W.D.N.Y. 2014).

## Conclusion

There is no consensus regarding how to calculate a law firm debt collector's net worth for the purpose of determining statutory damages under the FDCPA. And there appears to be no law on this topic in the Eleventh Circuit. However, given the realities of how law firms generate revenues and profits, an analysis of a firm's average annual gross revenues is the most fair and reasonable method to determine a law firm's net worth—without the need for expert testimony, burdensome discovery, and related motion practice. To be sure, without valuing a firm's income stream and by only examining tangible assets, even the most profitable law firms will appear on paper to be virtually worthless and aggrieved consumers will be left without statutory damages. This cannot be the result intended by Congress under the FDCPA.

Thus, and for the reasons set forth herein, Ms. Roundtree respectfully requests that this Court hold that Bush Ross's net worth be determined based on its annual gross revenues and compel Bush Ross to produce documentation setting forth those revenues for the years 2011-2015.

Dated this 16th day of June, 2015.　　　*/s/ Michael L. Greenwald*
　　　　　　　　　　　　　　　　　　　　　**MICHAEL L. GREENWALD**
　　　　　　　　　　　　　　　　　　　　　Florida Bar No. 761761
　　　　　　　　　　　　　　　　　　　　　**JAMES L. DAVIDSON**
　　　　　　　　　　　　　　　　　　　　　Florida Bar. No. 723371
　　　　　　　　　　　　　　　　　　　　　GREENWALD DAVIDSON RADBIL PLLC
　　　　　　　　　　　　　　　　　　　　　5550 Glades Road, Suite 500
　　　　　　　　　　　　　　　　　　　　　Boca Raton, FL 33431
　　　　　　　　　　　　　　　　　　　　　Telephone: 561.826.5477
　　　　　　　　　　　　　　　　　　　　　Fax: 561.961.5684
　　　　　　　　　　　　　　　　　　　　　mgreenwald@gdrlawfirm.com
　　　　　　　　　　　　　　　　　　　　　jdavidson@gdrlawfirm.com

　　　　　　　　　　　　　　　　　　　　　Counsel for Plaintiff and Class Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on June 16, 2015, via the Court Clerk's CM/ECF system which will provide notice to Defendant's counsel of record:

Dale T. Golden
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609
Telephone:　　813.251.5500
Telecopy:　　　813.251.3675
dgolden@gsgfirm.com

　　　　　　　　　　　　　　　　　　　　　*/s/ Michael L. Greenwald*
　　　　　　　　　　　　　　　　　　　　　**MICHAEL L. GREENWALD**
　　　　　　　　　　　　　　　　　　　　　Florida Bar. No. 0761761

10