UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |
|---|---|
| LINDA ROUNDTREE, Individually and On Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BUSH ROSS, P.A., <br><br> Defendant. | Case No.: 8:14-cv-00357-JDW-AEP |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

On February 11, 2014, Linda Roundtree filed her complaint against Bush Ross, P.A., asserting class claims under the Fair Debt Collection Practices Act ("FDCPA"). ECF No. 1. The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692(k). The provisions of the FDCPA declare certain rights available to debtors, forbid deceitful and misleading practices, and prohibit harassing and abusive tactics.

After nearly 18 months of hard-fought litigation, Ms. Roundtree and Bush Ross—with the assistance of mediator James R. Betts, Esq.—have reached an agreement to resolve this case. To that end, Bush Ross will create a settlement fund, in the amount of $70,000, from which unique members of the three certified classes will receive a pro-rata share. Bush Ross will pay Class Counsel's attorneys' fees and expenses, as well as the costs of administering the settlement and

1

providing direct mail notice to class members, separate and apart from the settlement fund. This settlement fund exceeds the class-wide statutory damages allowed by the FDCPA, which are capped by statute at one percent of Bush Ross's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). Considering the strengths and weaknesses of this case, as well as the statutorily-limited damages available to the settlement class under the FDCPA, the settlement represents an excellent result for Florida consumers.

Herein, Ms. Roundtree seeks preliminary approval of the settlement. Ms. Roundtree and her counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Ms. Roundtree respectfully requests that the Court enter the accompanying order granting preliminary approval of the settlement. Bush Ross does not oppose this relief.

## Summary of the Settlement

**A. Ms. Roundtree's litigation efforts have resulted in an excellent recovery for Florida consumers.**

The parties vigorously litigated this matter through class certification and up to the close of discovery. The issues in this case involved, *inter alia*, whether class certification was appropriate, whether Bush Ross's conduct violated the FDCPA, and the measure of damages available to class members. Accordingly, Class Counsel conducted extensive fact discovery, which included two sets of written interrogatories and requests for production, two motions to compel responses to the same, reviewing documents produced by Bush Ross, third-party discovery, and follow-up discovery regarding damages. Class Counsel also spent significant time

and effort defeating Bush Ross's motion to dismiss, securing certification of the classes, and defending against Bush Ross's motion to reconsider the Court's class certification order and its petition for interlocutory review to the Eleventh Circuit.

During this intensive litigation, the parties attended mediation before James R. Betts, Esq. During the mediation session, the parties reached an agreement in principle to settle this matter. Ultimately, on July 15, 2015, the parties entered into a settlement agreement memorializing the terms of their settlement and resolving the litigation. The settlement agreement, and its exhibits, are attached to the Declaration of Michael L. Greenwald, submitted herewith.

**B. The settlement provides for a common fund of $70,000.**

The settlement resolves the claims asserted on behalf of the classes of Florida consumers certified by the Court on February 17, 2015. ECF No. 66. The settlement requires Bush Ross to create a settlement fund of $70,000.00, which exceeds the cap on statutory damages of one percent of Bush Ross's net worth. Class members who participate in the settlement will receive a pro-rata portion of the settlement fund, allowing a minimum recovery of at least $39 per class member—assuming all class members submit valid claims.[1] However, given that not all persons who receive

---

[1] Notice will be sent to every natural person to whom Bush Ross sent an initial debt collection letter, or against whom Bush Ross filed a foreclosure complaint, between February 7, 2013 and February 6, 2014. This includes the universe of all potential members of the three certified classes. However, some of these individuals did not incur their obligations for personal, familial, or household purposes and, as a result, will not be class members. See ECF No. 66 (limiting class members to those who incurred their debts for personal, familial, or household purposes). Thus, while the parties do not know the exact number of class members, the maximum number of unique class members is 2,990, and the number of true class members will be lower. Based on its experience, Bush Ross estimates that approximately 60 percent—or approximately 1,794 persons—likely are class members. To participate in the settlement, a class member will aver that she incurred her debt for personal, familial, or household purposes. *See* Claim Form, attached to the Settlement Agreement as Exhibit C ("I certify that I am a member of at least one of the three Classes and that the assessments Bush Ross, P.A. sought to collect from me were incurred for personal, familial or household purposes. That is, the assessments Bush Ross sought to collect from me were not incurred on a commercial property that I own or lease, and I wish to

3

notice will be class members, and given that claims rates in consumer protection settlements normally range from approximately 5 percent to 15 percent, each class member who chooses to participate in the settlement is likely to receive approximately $260 (assuming a 15 percent claims rate, and that 60 percent of the persons who receive notice are class members) to $780 (5 percent). To the extent any settlement checks go uncashed after the class administrator takes all reasonable steps to forward checks to any forwarding addresses, such funds will be redistributed to all valid claimants on a pro-rata basis if the amount equals at least $5.00 per class member or, if necessary, to a *cy pres* recipient.

Subject to this Court's approval, the costs of notice and administration, and an award of attorneys' fees and expenses, will be paid separately by Bush Ross and will not dilute claimants' recoveries from the settlement fund.[2] To that end, Bush Ross has agreed to pay an award of attorneys' fees to Class Counsel and reimbursement of their reasonable costs and expenses, in the total amount of $170,000.00. Of note, and as will be documented in Class Counsel's petition for an award of attorneys' fees and reimbursement of expenses filed in conjunction with final approval of the settlement, Class Counsel's fees and expenses exceed $170,000.00.

**C. The settlement provides for direct mail notice to all class members.**

The settlement requires an ample notice program, including direct mail notice to each potential class member. The notice program also requires that a straightforward claim form and return envelope be sent to each class member. The class administrator will take all reasonable

---

participate in this settlement."). Class members will not need to provide any additional documentation or information to participate in the settlement.

[2] While Ms. Roundtree does not seek an incentive award, as part of this settlement Bush Ross will dismiss the state court foreclosure complaint it filed against her and no longer seek to collect alleged past-due assessments from her. Of note, Ms. Roundtree strongly disputes that she owes any monies to Bush Ross, or any past-due assessments, late fees, or other associated costs.

steps necessary to ensure that each class member receives direct mail notice, including updating addresses for any mail returned as undeliverable.

Importantly, class members will need to certify that they incurred their obligations for personal, familial, or household purposes—but will not be required to submit any other proof—to participate in the settlement. A copy of the proposed claim form is attached to the Agreement as Exhibit C. *See* n.1, *supra*.

### The Settlement Class

The settlement class consists of each unique member of the three classes of Florida consumers certified by the Court, ECF No. 66, on February 17, 2015:

> **The Overshadowing Class:** All persons located in the State of Florida to whom, between February 7, 2013 and February 6, 2014, Bush Ross, P.A. sent an initial written communication, which was not returned as undeliverable, in connection with an attempt to collect any alleged debt incurred for personal, family, or household purposes, in which the initial written communication stated as follows:
>
>> Unless the entire sum is paid within thirty (30) days of your receipt of this letter, we shall proceed with appropriate actions to protect the Association's interests, including, but not limited to the filing of a claim of lien and foreclosure thereon. and/or
>>
>> This is the only communication regarding this matter that you will receive prior to the filing of a claim of lien. and/or
>>
>> Any further communication regarding this matter shall be in writing for your own protection.
>
> **The Fee Class:** All persons located in the State of Florida to whom, between February 7, 2013 and February 6, 2014, Bush Ross, P.A. sent a demand for payment for Bush Ross, P.A.'s fees and expenses incurred in connection with its attempts to collect a debt incurred for personal, family, or household purposes from such person.
>
> **The Lawsuit Class:** All persons located in the State of Florida to whom, between February 7, 2013 and February 6, 2014, Bush Ross, P.A. sent a "Notice Required by the Fair Debt Collections Practices Act" as part of a lawsuit filed by Bush Ross, P.A. to collect a debt incurred for personal, family, or household purposes against such person.

Because there is considerable overlap among members of the three classes,[3] and because the FDCPA limits a consumer's recovery no matter the number of FDCPA violations, each unique member of the three certified classes who chooses to participate in the settlement will receive a pro-rata portion of the settlement fund.

**Argument**

**A. The Court should preliminarily approve the settlement as fair, reasonable, and adequate.**

Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION §21.633-34; 4 NEWBERG, *supra* at §11.25.

Preliminary approval requires only that the Court evaluate whether the proposed settlement: (1) was negotiated at arm's-length, and (2) is within the range of possible litigation

---

[3] For example, each member of the Overshadowing Class, and each member of the Lawsuit Class, is also a member of the Fee Class. In addition, almost every member of the Lawsuit Class is also a member of the Overshadowing Class.

outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION §21.632-33; *Clark v. Ecolah, Inc.*, No. 07 Civ. 8623 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (noting that preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties.). The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable, and should be preliminarily approved.

    **1. There was no fraud or collision behind the settlement.**

As the Court is well aware, the parties engaged in hotly contested litigation for nearly 18 months. The litigation involved over 100 docket entries, extensive discovery, multiple discovery disputes necessitating the Court's intervention, extensive briefing on class certification, a petition

for interlocutory appeal, and briefing on Bush Ross's motion to dismiss. The settlement was reached only after this extensive litigation, at the close of discovery, and with the considerable assistance of mediator James R. Betts, Esq. The settlement, therefore, is not a product of collusion and was the result of arm's-length settlement negotiations, with the assistance of a seasoned mediator, when each party had a clear view as to the strengths and weaknesses of its position.

### 2. The complexity, expense and likely duration of the litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00–14017–CIV., 2002 WL 1162422, at *4 (S.D. Fla. 2002) (both citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "Courts consistently recognize that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement . . . ." *In re Advanced Battery Technologies, Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. Mar. 24, 2014); *Amoco Oil*, 211 F.R.D. at 469 ("The parties have spent a great deal of time and expense analyzing the legal and factual issues this case presents . . . [and] therefore, have good cause to settle this matter, another factor favoring this Court's approval of the settlement agreement.").

By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Id*. at 466; *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

This case was no different. The parties engaged in significant motion practice, including

Bush Ross's petition for interlocutory review of the Court's order granting class certification. Significant motion practice lay ahead as well, including competing motions for summary judgment and Ms. Roundtree's motion *in limine* regarding Bush Ross's net worth. From there, the case was headed toward trial. Given the considerable work already performed—and the work left to perform, including any appeals—settlement was warranted. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial").

### 3. The factual record is sufficiently developed to enable Ms. Roundtree and Class Counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the litigation had been ongoing for nearly 18 months, and included extensive briefing on class certification and two discovery disputes requiring Court intervention. The parties also engaged in third-party discovery. The settlement was, therefore, consummated when the parties had a good view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

9

### 4. The probability of Ms. Roundtree's success on the merits and the range of possible recovery favor preliminary approval.

The Court must also consider "the likelihood and extent of any recovery from the defendants absent ... settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

The parties vehemently disagreed about the merits, and there is uncertainty about the ultimate outcome of this litigation. Moreover, the potential recovery for the settlement class is capped by statute at one percent of Bush Ross's net worth. *See* 15 U.S.C. § 1682k(A)(2)(B) (limiting a class's recovery "without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

Given this uncertainty and the FDCPA's limitations on damages, the recovery here can only be seen as a tremendous result. Indeed, the $70,000 settlement fund represents twice the statutory damages available had Ms. Roundtree prevailed at trial and on appeal.[4] *See In re*

---

[4] Bush Ross contends it has a negative balance sheet net worth under *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k(a)(B) of FDCPA means "balance sheet or book value net worth"), and that maximum statutory damages for the class are zero. However, after discovery and negotiations, the parties stipulated that, for the purposes of this litigation, Bush Ross's net worth would be considered $3.5 million. One percent of $3.5 million is $35,000. Thus, the settlement is two percent of Bush Ross's stipulated net worth.

*Advanced Battery*, 298 F.R.D. at 178 ("While Lead Counsel believes in the merits of the case, Defendants surely would have raised vigorous challenges to class certification. Moreover, even if the Class were certified, Defendants may have moved to decertify the Class before trial or on appeal at the conclusion of trial, as class certification may always be reviewed.…Given such risk, this factor weighs in favor of approval of the Settlement."). Given the damages cap applicable to FDCPA classes, the relief provided for in the settlement here is substantial, and is well in line with that provided for in other FDCPA class actions. Indeed, as noted above, participating class members are likely to receive between $260 (assuming a 15 percent claims rate) to $780 (5 percent). *See, e.g.*, *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *3, *14 (D.N.J. Sept. 10, 2013) ($40,000 fund for class of 49,156 resulted in recovery of $7.87 per claimant); *Jerman v. Carlisle*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010) (certifying class even though cap on damages under FDCPA would limit relief to $3.10 per class member); *Hicks v. Client Servs., Inc.*, 257 F.R.D. 699, 700-01 (S.D. Fla. 2009) (approving class settlement where the maximum per-member recovery was $1.24); *Jancik v. Cavalry Portfolio Servs., LLC*, CV-06-3104 (MJD/AJB), 2007 WL 1994026 (D. Minn. July 3, 2007) (certifying an FDCPA class where the class members could have recovered only $6.94 each); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (settlement fund of $21,759 would net class members approximately $7.32); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA settlement where class members returning claim forms would receive $11.90 each).

### 5. The opinions of Class Counsel and the Class Representative favor preliminary approval.

Class Counsel is experienced in class action litigation, having litigated consumer protection cases on a class-wide basis in many jurisdictions. *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 14-00130, 2015 WL 2088969, at *2 (D.N.M. Apr. 21, 2015) (preliminarily approving class action

settlement and appointing Greenwald Davidson Radbil PLLC class counsel); *Ritchie v. Van Ru Credit Corp.*, No. 12-01714, 2014 WL 3955268, at *2 (D. Ariz. Aug. 13, 2014) (same).[5] Both Ms. Roundtree and Class Counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members.

Further, a strong initial presumption of fairness should attach to the proposed settlement because it was reached by experienced counsel after arm's-length negotiations with a seasoned mediator. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). For all of the foregoing reasons, the settlement agreement here should be preliminarily approved.

---

[5] Greenwald Davidson Radbil PLLC has been appointed class counsel in nearly a dozen cases in the past 18 months, including this one. *See, e.g.*, *Prater v. Medicredit, Inc.*, Case No. 4:14-cv-00159-ERW, 2015 WL 4385682 (E.D. Mo. July 13, 2015); *Rhodes v. Olson Associates, P.C. d/b/a Olson Shaner*, --- F. Supp. 3d ----, 2015 WL 1136176, at *14 (D. Colo. Mar. 13, 2015); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *2 (S.D. Fla. Feb. 23, 2015); *Esposito v. Deatrick & Spies, P.S.C.*, No. 13-1416, 2015 WL 390392, at *2 (N.D.N.Y. Jan. 28, 2015); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-00142, 2015 WL 223764, at *2 (S.D. Ohio Jan. 16, 2015); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522, at *2 (E.D. Mich. Jan. 14, 2015); *Hunter v. Nicholas Fin. Corp.*, No. 0:13-cv-61126-DMM, Doc. 32 (S.D. Fla. Apr. 28, 2014); *White, et al. v. Scott E. Alexander*, No. 3:12-cv-06050-RBL (W.D. Wash. Feb. 28, 2014); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. 2014).

**B. The Court should approve the proposed notice to class members.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts. . . ." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

Here, the parties have agreed to a notice program to be administered by a third-party class administrator that will use all reasonable efforts to provide direct mail notice, including a claim form and return envelope, to each potential class member. This notice plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Class Counsel's request for an award of attorneys' fees and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries and obtain additional information. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312. A copy of the proposed notice is attached as Exhibit B to the settlement agreement.

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

### C. The Court should schedule a final approval hearing.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval. In addition, class members who have properly objected to the settlement may be heard at this hearing. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties request that the Court set a date for a hearing on final approval at the Court's convenience, between 90 and 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Ms. Roundtree respectfully requests that the Court enter the Order submitted herewith granting preliminary approval of the above-described class action settlement. As noted, Bush Ross does not oppose the relief requested herein.

Dated this 27th day of July, 2015.

*/s/ Michael L. Greenwald*
Michael L. Greenwald
Florida Bar No. 761761
James L. Davidson
Florida Bar. No. 723371
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Counsel for Plaintiff and Class Counsel

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed using the Court's CM/ECF system, on this 27th day of July, 2015, which will send notice to Defendant's counsel of record:

DALE T. GOLDEN
Golden Scaz Gagain, PLLC
201 North Armenia Avenue
Tampa, FL 33609
dgolden@gsgfirm.com

Counsel for Bush Ross, P.A.

*/s/ Michael L. Greenwald*
Michael L. Greenwald